UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EMELINA RIVERA, ET AL | CIVIL ACTION |
| VERSUS | NO. 10-4157 |
| INTERFACE SECURITY SYSTEMS, LLC | SECTION "F" |

ORDER & REASONS

Before the Court are the defendant Interface Security System LLC's motions for summary judgment. For the following reasons, the motion on plaintiffs Morena Perla and Ilsy Hurtado's claims is GRANTED; the motion on plaintiff Emelina Rivera's claims is DENIED.

## Background

On the evening of September 18, 2009, three men robbed Miguelitos #2, a cash-checking and money-transfer business, holding employees Morena Perla and Ilsy Hurtado at gun point. Perla claims she repeatedly pressed a panic button. It failed to deploy,[1] and the robbers apparently escaped with around $40,000 in cash from the store safe, two cell phones, jewelry, and Perla's and Hurtado's personal cash. The robbers were never caught.

Five months before the incident, Miguelitos #2's owner, Emelina Rivera, through the store's manager Lydia Pineda (Rivera's daughter), entered into a "residential security services agreement" with Interface Security Systems, LLC to provide "event monitoring

---

[1] In its reply to the plaintiffs' opposition memorandum, Interface provides an affidavit that later testing of the panic button showed it to be functioning properly.

1

and notification service," including "intrusion alarm monitoring," for which the response would be "verification" and also "police emergency/hold up", for which the response would be "dispatch," apparently through the use of a panic button.  Under the agreement, Interface agreed to install equipment at the cost of $385 and to provide services for a monthly fee of $29.95.[2]

The two-page contract limits Interface's liability to $1000 in certain circumstances:

> 5.   DISCLAIMER/LIMITATION   OF   LIABILITY. CUSTOMER UNDERSTANDS AND AGREES AS FOLLOWS:
> . . .
> (IV) COMPANY AND REPRESENTATIVES ARE RELEASED FROM ALL LIABILITY DUE TO ITS OR THEIR ACTIVE OR PASSIVE SOLE, JOINT OR SEVERAL NEGLIGENCE OF ANY KIND OR DEGREE, THE IMPROPER OPERATION OR NON-OPERATION OF THE SYSTEM, BREACH OF CONTRACT, EXPRESS OR IMPLIED, BREACH OF WARRANTY, EXPRESS OR IMPLIED, OR BY LOSS OR DAMAGE TO OR MALFUNCTION OF FACILITIES NECESSARY TO OPERATE THE SYSTEM, TRANSMIT ANY SIGNAL OR OPERATE ANY MONITORING FACILITY. SHOULD THERE ARISE ANY LIABILITY ON THE PART OF COMPANY OR REPRESENTATIVES FOR ANY LOSS, DAMAGE OR EXPENSE DUE TO ITS OR THEIR ACTIVE OR PASSIVE SOLE, JOINT OR SEVERAL NEGLIGENCE OF ANY KIND OR DEGREE WHICH OCCURS BEFORE OR AFTER THE SIGNING OF THIS AGREEMENT PRODUCT OR STRICT LIABILITY, BREACH OF WARRANTY, EXPRESS OR IMPLIED, BREACH OF CONTRACT, EXPRESS OR IMPLIED, OR FOR SUBROGATION CONTRIBUTION OR INDEMNIFICATION, ALL SUCH LIABILITY SHALL BE LIMITED TO THE MAXIMUM SUM OF $1,000.00

---

[2] Troublingly, the contract contains forum-selection and choice-of-law clauses which, respectively, would divest this Court of jurisdiction and require application of Missouri state law.  Because neither party briefed this issue in the motion, opposition, or reply briefs, the Court treats these issues as waived.

COLLECTIVELY FOR COMPANY AND REPRESENTATIVES.

This disclaimer appears on the contract's first page and is in bold letters, embedded in a sheet of small, tight print. Rivera has testified that Pineda and her husband held all actual power over the operations of the store; Rivera was merely its owner in name and opened the store on her daughter's behalf because she had better credit. But Rivera now contends that Pineda's authority was limited: to sign a contract for the sale and installation of the security system; that Rivera did not give Pineda the authority to agree to a disclaimer of liability. What is clear is that Rivera authorized the purchase of the security system, had an opportunity to look at the short contract, and never exercised an option under the contract to increase Interface's maximum liability. (She also concedes that had any option been exercised, it would have been Pineda's decision to do so.)

Claiming that the robbers' escape resulted from Interface's negligence, Rivera, Perla, and Hurtado sued Interface.[3] The plaintiffs specifically claim that

> The robbers' escape resulted in whole or in part due to the negligence of Defendant Interface, which negligence consists more particularly, but not exclusively of the following:
> a) Improper installation of the alarm monitoring system and/or panic button;

---

[3] The plaintiffs sued in the 24th Judicial District Court for Jefferson Parish. Interface removed on the basis of this Court's jurisdiction sitting in diversity.

>b) Improper monitoring of the alarm monitoring system and/or panic button;
>c) Improper design of the alarm monitoring system and/or panic button;
>d) Improper maintenance of the alarm monitoring system and/or panic button;
>e) Improper testing of the alarm monitoring system and/or panic button; and
>f) Any other acts of negligence which may be proven at trial.

Rivera seeks loss of income, loss of business assets, financial losses resulting from lost income, property damage, and other reasonable damages. Hurtado and Perla claim past, present, and future mental anguish and emotional distress; inability to function and interact normally with family members; loss of personal property; and other reasonable damages.

Interface now moves for summary judgment. It asserts that it owes no legal duty to Perla and Hurtado; it further maintains that its liability to Rivera, if confirmed, must be limited to $1,000 under the terms of the contract.

### **Law & Analysis**

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine issue

of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  He instead must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

*Perla and Hurtado's Negligence Claim*[4]

To determine liability under Article 2315 of the Louisiana Civil Code, Louisiana employs the duty-risk analysis, which consists of four inquiries: (1) was the defendant's conduct the cause-in-fact of the resulting harm; (2) did the defendant owe a duty to the plaintiff; (3) was that duty breached; and (4) was the resulting harm within the "scope of protection" of the duty breached. Mathieu v. Imperial Toy Corp., 646 So.2d 318, 321-22 (La. 1994).

A.

Interface disputes that it owed any duty to Hurtado and Perla and particularly disclaims that it owed them a duty to protect them from the criminal acts of another. This presents a question of law. See, e.g., S.J. v. Lafayette Parish Sch. Bd., 41 So.3d 1119, 1125 (La. 2010).

"In deciding whether to impose a duty in a particular case," the Louisiana Supreme Court instructs that this Court "must make a policy decision in light of the unique facts and circumstances presented." Posecai v. Wal-Mart Stores, Inc., 752 So.2d 762, 766 (La. 1999).

---

[4] Because plaintiffs' complaint only raises a claim of negligence, the Court does not reach, and the plaintiffs apparently do not dispute, Interface's claim of no liability to Perla and Hurtado under a contract theory.

> The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving.

Id.; accord McLachlan v. New York Life Ins. Co., 488 F.3d 624 (5th Cir. 2007).

Louisiana courts have not addressed whether a security services company owes a noncontractual duty to employees to maintain a system it leases to their employer. Interface presses the Court to adopt the reasoning of a Texas appellate court, which found in circumstances similar to those here that a security company had no duty of ordinary care to employees of a store who sustained injuries during the store robbery. See Banzhaf v. ADT Sec. Sys. Sw., Inc., 28 S.W.3d 180 (Tex. App.—Eastland 2000). The Texas court focused on whether the security company had control over the safety and security of the premises and found it did not because the store, rather than the security company, selected its own security measures, instructed its employees on security-related matters, and set its own security policies; in contrast, the security company merely furnished equipment, monitored the store's alarm when activated after store hours, and did not furnish guards or other daytime security. Id. at 186.

Perla and Hurtado urge this Court to find a duty under the

principle that contractors can be liable to third parties for negligent performance of their work. In the cases plaintiffs invoke, the courts considered imposing liability on contractors whose alleged failure to repair resulted in some sort of accident, such as an oil refinery fire, Carroll v. Newtron, Inc., 477 So.2d 719, 727, rev'd in part, 477 So.2d 728 (La. App. 3 Cir. 1985), a catastrophic car accident, Carter v. Deitz, 556 So.2d 842, n.26 (La. App. 4 Cir. 1990), a bicycle accident, Clement v. State, 528 So.2d 176 (La. App. 1 Cir. 1988). These cases are not applicable here, where the plaintiffs charge Interface with negligence which they claim resulted in a criminal act, the robbery, that allegedly injured them.

Other cases relied on by the plaintiffs simply confirm that Interface could be liable to Rivera—rather than Perla or Hurtado— for a defect in the security system, if one is proven. See Lazybug Shops, Inc. v. Am. Dist. Telegraph Co., 374 So.2d 183 (La. App. 4 Cir. 1979); Peacock's, Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La. App. 2 Cir. 1987); Harris v. Pizza Hut of La., Inc., 455 So.2d 1364 (La. 1984). They do not provide a principled basis for imposing liability on Interface for Hurtado's and Perla's injuries.

More importantly, Perla and Hurtado fail to articulate the duty they claim Interface owed them. Instead, they indiscriminately assert that "Interface owed and breached a duty," and "Interface had a legal duty." Interface's motion for summary

8

judgment on Perla's and Hurtado's claims is therefore GRANTED.

III.

*Limitation of Liability*

Interface also seeks to limit its liability to $1,000 as provided for in the security services agreement signed by Pineda, relying on the principle that "limitation of liability clauses as in the present case are valid and not against public policy." Soileau & Coreil v. Trans-Western Pub., 542 So.2d 198 (La. App. 3 Cir. 1989); accord Haspel v. Rollins Protective Serv., Inc., 490 So.2d 530, 532 (La. App. 4 Cir. 1986).

Rivera disputes the enforceability of the limitation provision on several grounds: (1) the clause is null because it seeks to limit Interface's liability for intentional or gross fault; (2) the clause is unenforceable as to Miguelitos #2 because the agent signing the contract lacked express or implied authority to limit the liability of Miguelitos #2; (3) the clause is not enforceable because it did not result from mutual consent or meeting of the minds of the parties.

A.

Under the Louisiana Civil Code, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." LA. CIV. CODE. art. 2004. The limitation clause limits Interface's liability for "negligence of any kind or degree." Rivera makes no

9

allegations and provides no factual support tending to show that Interface acted with intentional or gross fault.

B.

The parties have not briefed the following issues:

> (1) whether, as a legal matter, Louisiana Civil Code article 2004 only becomes relevant where intentional or gross fault is actually alleged; and
>
> (2) whether the clause absolving Interface of liability for "negligence of any kind or degree" encompasses intentional or gross fault which could support Rivera's attempt tothe non-enforcement of the limitation of liability clause.

Interface's motion for summary judgment on Rivera's claims is therefore DENIED without prejudice. Interface's motion for summary judgment on Perla and Hurtado's claims is GRANTED.

New Orleans, Louisiana, August 22, 2011.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE